# IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
# STATE OF MISSOURI

| | |
|---|---|
| BUSEY BANK, an Illinois banking corporation, ) ) ) **Plaintiff,** ) ) v. ) ) BENJA INCORPORATED, ) a Delaware corporation, ) <u>Serve</u>:  Andrew Chapin ) 26 Cragmont Avenue ) San Francisco, CA 94116 ) and ) ) ANDREW J. CHAPIN, ) <u>Serve at</u>: 26 Cragmont Avenue ) San Francisco, CA 94116 ) ) **Defendants.** ) | Case No.: Division: |

## **VERIFIED PETITION**

COMES NOW Plaintiff, Busey Bank, by and through its undersigned counsel, and for its causes of action against Defendants Benja Incorporated and Andrew J. Chapin, states as follows:

1. Filed contemporaneously herewith and in support of Plaintiff's Petition is the Verification of Michael McElhone, who is a Vice President and Special Assets Officer at the Bank. Such Verification from Mr. McElhone verifies the facts and matters set forth herein, and further authenticates each of the Exhibits identified herein and attached to this Petition.

2. Also filed contemporaneously herewith and in support of Plaintiff's Petition is the Affidavit of Joe Alouf, who was the Interim President and Chief Financial Officer of Benja until his purported termination on October 2, 2020. The Alouf Affidavit verifies certain additional

facts and matters as set forth herein in support of this Petition relating to extensive fraudulent actions committed by Benja by and through Chapin (as defined below).

## Parties

3. Plaintiff Busey Bank (the "Bank" or "Plaintiff") is an Illinois banking corporation, organized and existing under and by virtue of the laws of the State of Illinois and doing business in St. Louis County, Missouri.

4. Defendant Benja Incorporated, is a Delaware corporation ("Benja").

5. Defendant Andrew J. Chapin is an individual residing in San Francisco, California ("Chapin").

## Jurisdiction and Venue

6. This Court has jurisdiction over the subject matter of this cause of action and the Defendants herein because the Defendants contractually submitted to this Court's jurisdiction and agreed that this Court would be the proper forum for the dispute that is the subject of this action pursuant to a valid and enforceable forum selection clause.

7. Venue is proper in this Court pursuant to RSMo. §508.010 because none of the Defendants is a resident of Missouri, the Court otherwise has personal jurisdiction over each of the Defendants, and the Defendants contractually agreed to St. Louis County, Missouri as the appropriate venue for the dispute that is the subject of this action.

## General Allegations

8. On July 16, 2019, Benja executed a Promissory Note in favor of the Bank dated as of July 16, 2019, in the principal amount of $1,000,000.00, as replaced and superseded by a Promissory Note dated as of February 28, 2020, executed by Benja in favor of the Bank in the

original principal amount of $3,000,000.00, as further replaced and superseded by a Promissory Note dated as of August 20, 2020, executed by Benja in favor of the Bank in the original principal amount of $5,000,000.00 (collectively, the "Note") evidencing a loan (the "Loan") in the same amounts. A true and accurate copy of Note is attached hereto and incorporated herein by reference as **Exhibit 1**.

9. The Loan is also evidenced by a Business Loan Agreement (Asset Based) dated July 16, 2019, executed by Benja and the Bank, as amended by a Modification to Business Loan Agreement (Asset Based) dated as of February 28, 2020, executed by Benja in favor of Bank in the original principal amount of $3,000,000.00, as replaced and superseded by a Business Loan Agreement (Asset Based) dated as of August 20, 2020, executed by Benja in favor of Bank in the original principal amount of $5,000,000.00 (collectively, the "BLA").  A true and accurate copy of the BLA is attached hereto and incorporated herein by reference as **Exhibit 2**.

10. The Note is secured by a Commercial Security Agreement dated July 16, 2019 (the "Security Agreement") executed by Benja in favor of the Bank. Under the Security Agreement, and as security for the Loan, Benja granted to the Bank a security interest in the Collateral (as defined and as more particularly described therein), including, but not limited to, all of Benja's inventory, equipment, accounts, chattel paper, instruments, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles, and all proceeds, additions, substitutions, and replacements thereof. A true and accurate copy of the Security Agreement is attached hereto and incorporated herein by reference as **Exhibit 3**.

11. To perfect the security interest arising under the Security Agreement, the Bank caused a UCC Financing Statement to be filed on July 19, 2019, with the Delaware Department of State as File Number 20195005348 (the "UCC Filing" and, together with the Security Agreement, the "Security Documents"), with respect to all assets and property of Benja as described therein. A true and accurate copy of the UCC Filing is attached hereto and incorporated herein by reference as **Exhibit 4**.

12. Benja maintains a deposit account number XXXXX4766 at the Bank that is and has been used by Benja in connection its business. (The foregoing account, and any other accounts of Benja at the Bank, are collectively referred to herein as the "Deposit Account"). The Bank funded the Loan by depositing monies directly into the Deposit Account. The Deposit Account and the funds on deposit therein are part of the Collateral securing the Loan.

13. The Note is also secured by a Commercial Guaranty executed by Chapin on or about July 16, 2019 (the "Chapin Guaranty"). A true and accurate copy of the Chapin Guaranty is attached hereto and incorporated herein by reference as **Exhibit 5**.

14. The Note is also secured by a Commercial Guaranty executed by Thomas L. Goode III ("Goode") on or about July 16, 2019 (the "Goode Guaranty" and, together with the Chapin Guaranty, the "Guarantees"). A true and accurate copy of the Goode Guaranty is attached hereto and incorporated herein by reference as **Exhibit 6**.

15. The Note, BLA, Guarantees, Security Agreement, the UCC Filing, and all other agreements, instruments, and documents evidencing, securing, or otherwise relating to the Loan are collectively referred to herein as the "Loan Documents." Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Loan Documents.

16. Pursuant to a letter dated September 29, 2020 (the "Default Letter"), the Bank notified Benja and the Guarantors of various Events of Default under the Loan Documents and reserved all rights and remedies on account thereof under the Loan Documents, at law or in equity. As reflected in the Default Letter, the outstanding Events of Default include, without limitation, that Benja violated the BLA and Security Agreement in the following respects:

   a. Benja borrowed money from First Corporate Solutions and E-Revshare Core, LLC, and in connection therewith granted security interests to those lenders in assets of Benja.

   b. Benja allowed certain state tax liens in favor of the California Employment Development Department to be recorded against Benja and its assets on or about January 14, 2020, and March 9, 2020.

   c. Benja allowed a judgment in favor of Peter A. Manderino to be recorded against Benja and its assets on or about October 30, 2018.

   d. Additionally, as reflected in the Default Letter, Goode contends that he did not execute and/or is not bound by the Goode Guaranty. Although the Bank disputes this contention, if it is ultimately determined that Goode did not execute and/or is not bound by the Goode Guaranty, Benja violated the BLA, which required the execution of the Goode Guaranty as a condition to the Bank making the Loan.[1]

---

[1] The Bank is currently investigating the issues raised by Goode with respect to the execution and enforceability of the Goode Guaranty, and therefore has elected not to name Goode as a defendant herein or seek to enforce the Goode Guaranty against him at this time. By not naming Goode as a defendant herein, the Bank has not waived, and hereby preserves, all of its rights, claims and causes of action against Goode pursuant to the Goode Guaranty and otherwise.

    e. Finally, as reflected in the Default Letter, Benja violated the BLA by maintaining an operating account at JPMorgan Chase Bank, and not with the Bank, as the BLA requires that Benja maintain the Bank as its primary depository and cash management services institution.

A true and accurate copy of the Default Letter is attached hereto and incorporated herein by reference as **Exhibit 7**.

  17. As of October 1, 2020, the total balance due under the Note, exclusive of applicable late charges, default interest, and costs, expenses and attorneys' fees incurred by the Bank, is as follows:

| | |
|---|---|
| Principal: | $4,999,999.50 |
| Regular Interest: | $     26,656.53 |
| **Total:** | **$5,026,656.03** |

  18. Additionally, interest continues to accrue under the Note from and after October 1, 2020.

  19. True and accurate copies of a Loan Payoff Statement showing the balance due under the Note and a transactional history of the Loan are attached hereto and incorporated herein by reference as **Exhibit 8**.

**Count I**
BREACH OF CONTRACT
PROMISSORY NOTE
BENJA INCORPORATED

  COMES NOW Plaintiff, Busey Bank, by and through its undersigned counsel, and for its cause of action in Count I against Defendant Benja Incorporated, states as follows:

  20. Plaintiff realleges each and every allegation contained in the foregoing paragraphs above, as though fully set forth herein.

21. Defendant Benja is in default under the terms and conditions of the Note and the other Loan Documents.

22. The Loan Documents provide that, upon default, the Bank may, among other things, accelerate and declare the entire unpaid principal balance and all unpaid interest immediately due and payable, without notice.

23. The Note and the other Loan Documents also provide that Benja shall pay all costs of collection in the event of default, including the costs, expenses and attorneys' fees incurred by the Bank.

24. The Bank hereby exercises its option to declare all unpaid indebtedness under the Note immediately due and payable.

25. As of October 1, 2020, the total balance due under the Note (exclusive of costs, expenses and attorneys' fees incurred by the Bank) is as follows:

| | |
|---|---|
| Principal: | $4,999,999.50 |
| Regular Interest: | $     26,656.53 |
| **Total:** | **$5,026,656.03** |

26. Additionally, interest continues to accrue under the Note from and after October 1, 2020 at the rate of $577.26 per day.

27. Further, there are due and owing under the Note all costs, expenses and attorneys' incurred by the Bank in seeking to recover on the Note.

28. The Bank has performed all conditions precedent to enforcement of the Note and the other Loan Documents.

29. As a direct and proximate result of Defendant Benja's failure and refusal to pay the balance due under the Note, the Bank has been damaged in the total sum of $5,026,656.03 as

of October 1, 2020, together with all interest accruing after that date, all applicable late charges, default interest, and costs, expenses and attorneys' fees incurred by the Bank in seeking to recover on the Note.

WHEREFORE, Plaintiff prays this honorable Court for a judgment against Defendant Benja on the Note in the total sum of $5,026,656.03 as of October 1, 2020, consisting of the principal balance of $4,999,999.50 and regular interest due through October 1, 2020 in the amount of $26,656.53, together with all applicable late charges, default interest, and costs, expenses and attorneys' fees incurred by the Bank in seeking to recover on the Note at the time of entry of judgment herein, and for such other and further relief as the Court deems just and proper.

## Count II
### BREACH OF COMMERCIAL GUARANTY – ANDREW J. CHAPIN

COMES NOW Busey Bank, by and through its undersigned counsel, and for its cause of action in Count II against Defendant Andrew J. Chapin, states as follows:

30. Plaintiff re-alleges and incorporates all of the foregoing paragraphs above, as though fully set forth herein.

31. Chapin executed and delivered the Chapin Guaranty to the Bank, under which he absolutely and unconditionally guaranteed the full and prompt payment to the Bank of the amounts due under the Note.

32. In reliance on the Chapin Guaranty, the Bank agreed to loan money and otherwise extended credit to Benja, as evidenced by the Note.

33. The Note is in default, and Chapin is liable to pay the Bank the full balance due under the Note, and his failure to do so is and shall be a breach of the Chapin Guaranty.

34. The Chapin Guaranty also provides that Chapin agreed to pay upon demand all of the Bank's costs and expenses, including the Bank's attorneys' fees and legal expenses, incurred in connection with the enforcement of the Chapin Guaranty.

35. The entire balance of all principal, regular and default interest, late charges, attorneys' fees and legal expenses, and other sums owing under the Note is due and payable at this time.

36. The failure of Chapin to pay the entire indebtedness has damaged the Bank.

37. The Bank has performed all conditions precedent to enforcement of the Chapin Guaranty.

38. As of October 1, 2020, the total balance due under the Note (exclusive of costs, expenses and attorneys' fees incurred by the Bank) and due under the Chapin Guaranty is as follows:

| | |
|---|---|
| Principal: | $4,999,999.50 |
| Regular Interest: | $     26,656.53 |
| **Total:** | **$5,026,656.03** |

39. Further, there are due and owing under the Chapin Guaranty all costs, expenses and attorneys' fees incurred by the Bank in seeking to recover on the Chapin Guaranty.

40. As a direct and proximate result of Defendant Chapin's failure and refusal to pay the balance due under the Note pursuant to the Chapin Guaranty, the Bank has been damaged in the total sum of $5,026,656.03 as of October 1, 2020, together with all interest accruing after that date, all applicable late charges, default interest, and costs, expenses and attorneys' fees incurred by the Bank in seeking to recover on the Note.

WHEREFORE, Plaintiff prays this honorable Court for a judgment against Defendant Chapin on the Chapin Guaranty in the total sum of $5,026,656.03 as of October 1, 2020, consisting of the principal balance of $4,999,999.50 and interest due through October 1, 2020 in the amount of $26,656.53, together with all applicable late charges, default interest, and costs, expenses and attorneys' fees incurred in seeking to recover on the Chapin Guaranty at the time of entry of judgment herein, and for such other and further relief as the Court deems just and proper.

## Count III
### APPOINTMENT OF RECEIVER

COMES NOW Plaintiff, Busey Bank, by and through its undersigned counsel, and for its cause of action in Count III for appointment of a Receiver, states as follows:

41. Plaintiff realleges each and every allegation contained in all of the foregoing paragraphs above, as though fully set forth herein.

42. As set forth above, the Note and Loan are secured by the Security Documents under which Benja granted the Bank security interests in the Collateral.

43. Based on the outstanding Events of Default, the Bank has exercised its option to declare all unpaid indebtedness under the Note immediately due and payable.

44. The Bank also exercised its option to make an application to the Court for an appointment of a Receiver over Benja for the benefit of the Bank, and to take possession of the Collateral, with the power to manage, receive, collect, and apply all income and revenues with respect to Benja and the Collateral.

45. This Court is empowered to appoint a receiver pursuant to RSMo. §515.500 et seq., known as the Missouri Commercial Receivership Act (the "Receivership Act") and

Electronically Filed - St Louis County - October 06, 2020 - 05:19 PM

Missouri Supreme Court Rule 68.02.

46. Section 515.510.1 of the Receivership Act provides in relevant part that:

(T)he court, or any judge thereof on vacation, shall have the power to appoint a receiver, whenever such appointment shall be deemed necessary, whose duty it shall be to keep and preserve any moneys or other thing deposited in court, or that may be subject of a tender, and to keep and preserve all property and protect any business or business interest entrusted to the receiver pending any legal or equitable action concerning the same, subject to the order of the court, including in the following instances:

. . .

(2) In an action in which the person seeking appointment of a receiver has a lien on or interest in property or its revenue-producing potential, and either:

(a) The appointment of a receiver with respect to the property or its revenue-producing potential is necessary to keep and preserve the property or its revenue-producing potential or to protect any business or business interest concerning the property or its revenue-producing potential; or

(b) The appointment of a receiver with respect to the property or its revenue-producing potential is provided for by a valid and enforceable contract or contract provision;

. . .

(9) In an action against any entity if that person is insolvent or is not generally paying the entity's debts as those debts become due unless they are the subject of bona fide dispute;

. . .

(12) Pursuant to the terms of a valid and enforceable contract or contract provision providing for the appointment of a receiver, other than pursuant to a contract or contract provision providing for the appointment of a receiver with respect to the primary residence of a debtor who is a natural person;

. . .

(14) To prevent irreparable injury to the person or persons requesting the appointment of a receiver with respect to the debtor's property.

47. Additionally, Missouri Supreme Court Rule 68.02 states that:

> Whenever in a pending legal or equitable proceeding it appears to the court that a receiver is necessary to keep, preserve and protect any business, business interest or property, including money or other thing deposited in court or the subject of a tender, the court, or any judge thereof in vacation, may appoint a receiver whose duty it shall be to keep, preserve and protect, to the extent and in the manner that the court may direct, that which the receiver is ordered to take into the receiver's charge.

48. The Security Agreement provides the Bank with the right to appoint a receiver in the event of a default. In relevant part, the Security Agreement provides:

> **Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

49. The Security Agreement provides that the receiver may serve without bond if permitted by law.

50. A receiver is just and necessary to keep and preserve the Bank's business interest in Benja and security interests in the Collateral, and to prevent irreparably injury to the Bank, for the following reasons:

    a. Benja and the Guarantors are in extensive default under the Loan Documents, and such defaults remain outstanding despite notice;

    b. Benja contractually agreed to the appointment of a receiver in the event of default pursuant to the Security Agreement;

      c.      Chapin has engaged, and has caused Benja to engage, in an extensive pattern of malfeasance and fraud as set forth in the Affidavit of Joe Alouf, the extent of which requires an investigation by the receiver;

      d.      After such investigation, it may be necessary for the receiver to assert and maintain claims and causes of action on behalf of Benja that arose as a result of Chapin's actions;

      e.      It is necessary that a receiver take control of the revenues and income generated by Benja, preserve such income and revenues, pay ongoing expenses associated with the business, and pay the Bank the sums owed under the Note;

      f.      Federal and state income, payroll, sales, personal property, and similar tax returns may need to be executed and filed with respect to Benja, and the appointment of a receiver will help to assure that such tax returns are filed and every effort is made to pay such taxes;

      g.      The only source of repayment of the Note is from the recovery of the Collateral, including the recovery upon potential claims and causes of action, and a receiver is necessary to pursue and recover the Collateral in order to satisfy the balance due under the Note;

      h.      The Bank lacks other good and sufficient security from Benja or the Guarantors to further secure the Note; and

      i.      The Bank has a vested interest in making sure that Benja and the Collateral is not subject to waste, diversion, or diminution, whereby it may incur irreparable injury.

51. The Bank has no adequate remedy at law (other than under RSMo. §§ 515.500 et seq. and Missouri Supreme Court Rule 68.02) and is in need of this Court's Order Appointing a Receiver to protect its interests in Benja and the Collateral and to keep, preserve, and maintain Benja and the Collateral.

52. Without the appointment of a receiver to take control of, collect, manage, and liquidate Benja and the Collateral, and to enforce all rights of the Bank in Benja and the Collateral, the Bank and others will suffer irreparable injury and loss.

53. The appointment of a receiver pursuant to the Receivership Act and Missouri Supreme Court Rule 68.02 is appropriate for the foregoing purposes, with the power to take all actions of a receiver as defined in the Receivership Act and as permitted by the Security Agreement, and with the enumerated powers set forth below.

54. The Bank reserves the right, pursuant to the Security Documents to pursue any and all other remedies with respect to the Note described above, which may be available to the Bank pursuant to the Loan Documents or applicable law.

55. The Bank seeks the appointment of Howard B. Samuels of Rally Capital Services, LLC as a general receiver (the "<u>Receiver</u>") pursuant to §515.515 of the Receivership Act. Section 515.515 provides in relevant part as follows:

> A receiver shall be a general receiver if the receiver is appointed to take possession and control of all or substantially all of a debtor's property and provided the power to liquidate such property.

56. The proposed Receiver is suitable and capable, with extensive knowledge and expertise in the management of a business and collateral of this nature, as well as the pursuit of litigation claims that will likely be at issue.

Electronically Filed - St Louis County - October 06, 2020 - 05:19 PM

57. The Affidavit of Howard B. Samuels in support of the appointment of the Receiver has been filed contemporaneously herewith and is incorporated herein by reference. Attached to such Affidavit are the qualifications of the Receiver and the proposed hourly rates to be charged by the Receiver in this case.

WHEREFORE, Plaintiff prays this honorable Court enter an order and judgment:

A. Appointing Howard B. Samuels of Rally Capital Services, LLC as general Receiver for the following interests, including all income, revenues and proceeds of the same:

    1. Benja and all of its business, operations and assets;

    2. The Deposit Account;

    3. All other accounts of Benja; and

    4. All other Collateral identified in the Security Documents for the purpose of assembling and administering the Collateral and the proceeds thereof identified therein;

B. Granting to such Receiver all rights, powers and authority as more fully set forth in the proposed Order Appointing General Receiver filed contemporaneously herewith; and

C. Granting such other and further relief as the Court deems just and proper.

POLSINELLI PC

By: /s/ Michael A. Campbell
    MICHAEL A. CAMPBELL (#35392)
    mcampbell@polsinelli.com
    NICHOLAS A. GRIEBEL (#69104)
    ngriebel@polsinelli.com
    100 South Fourth Street, Suite 1000
    St. Louis, Missouri 63102
    (314) 889-8000

    JERRY L. SWITZER, JR. (*pro hac pending*)
    jswitzer@polsinelli.com
    150 North Riverside Plaza, Suite 3000
    Chicago, Illinois 60606
    (312) 873-3626


*ATTORNEYS FOR PLAINTIFF*
*BUSEY BANK*

## VERIFICATION

STATE OF MISSOURI    )
                     )
COUNTY OF ST. LOUIS  )

     I certify under PENALTY OF PERJURY under the laws of the State of Missouri that the foregoing paragraph is true and correct.

_____
Michael McElhone
Vice President and Special Assets Officer
Busey Bank

     Before me, the undersigned authority, on this day personally appeared Michael McElhone, who, being by me duly sworn, upon his oath, deposed and stated that he is a Vice President and Special Assets Officer of Busey Bank, and certifies that the statements set forth in this Petition are true and correct, except as to matters therein stated to be on information and belief, and to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

WITNESS my hand and official seal.

_____
Notary Public

My Commission Expires: 04/29/2023

> KAJAL TAYLOR
> Notary Public - Notary Seal
> State of Missouri
> Commissioned for St. Louis County
> My Commission Expires: April 29, 2023
> Commission Number: 19402167

74952835.5

1